**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) | |
|                                                 Plaintiff,         ) | No. 2:20-cv-00137-DCN |
|                                                 vs.         ) | **ORDER** |
| $32,920.00 IN UNITED STATES CURRENCY,         ) | |
|                                               Defendant.         ) | |

The following matter is before the court on claimants Omar Gentile ("Gentile") and Trea Gourdine's ("Gourdine") motion to dismiss, ECF No. 12. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

On May 20, 2019, Gentile and Gourdine (together, "claimants") arrived at the Charleston International Airport to take a flight to Seattle, Washington. After Gentile and Gourdine checked their luggage at the ticketing counter, Alaska Airlines employees reported to authorities that Gentile and Gourdine and their luggage smelled strongly of marijuana. Charleston County Aviation Authority ("CCAA") and Charleston County Sheriff's Office Metro ("CCSOM") officers arrived to investigate. The officers noted that each of the two bags that had been flagged by Alaska Airlines had name tags affixed—one with the name "Omar Gentile" and the other with the name "Trea Gourdine." CCSOM officers secured the bags and conducted a free air sniff using CCSOM K-9 Bostic certified by the North American Police Work Dog Association in narcotics detection. CCSOM K-9 Bostic alerted to the odor of narcotics on each bag.

1

After the positive K-9 alert, CCSOM officers proceeded to locate and question Gourdine and Gentile.  The officers noted that Gourdine was visibly nervous and began taking deep breaths.  When officers asked Gourdine and Gentile if there was any reason a K-9 might alert to their luggage, both initially answered "no."  However, both later admitted to smoking marijuana earlier in the day.  Gourdine and Gentile consented to a search of their luggage.  After a thorough search, officers found no illegal drugs, contraband, or drug paraphernalia in either man's luggage.  However, in Gourdine's luggage, officers discovered two bundles of U.S. currency concealed in the pockets of a pair of gym shorts and four bundles of U.S. Currency inside a zipped pocket of a pair of green pants.  In Gentile's luggage, officers discovered three bundles of U.S. currency in the pockets of a red jacket and another bundle of U.S. currency in the pocket of a pair of black pants.  In total, Gentile was in possession of $18,020.00, and Gourdine was in possession of $14,900.00, with a final count of $32,920.00 in U.S. Currency (the "defendant currency").  The government alleges all such currency was bundled with rubber-bands.

Gentile and Gourdine had both purchased one-way tickets to Seattle.  Officers asked Gentile about his travel plans, and Gentile stated that he was traveling to meet a recording artist by the name of "Jus Dirt."  Gentile indicated that he did not know "Jus Dirt's" real name and had only communicated with him via Instagram.  Gentile stated that he was planning on buying "beats" and shooting a music video.  Gentile indicated that he owned a music group called "No Fumbles Group" and was part owner of an auto-detailing business.  He further indicated that he was traveling with Gourdine, who was an aspiring rap artist.

Officers then separately asked Gourdine why he was traveling with such a large amount of currency. Gourdine stated that he was going to buy new clothes. Gourdine also stated that he worked for Gentile as an auto detailer, making $13.00 per hour. Both Gourdine and Gentile initially indicated that they owned all of defendant currency. However, when officers seized the defendant currency and provided Gourdine and Gentile a receipt for the same, Gentile stated for the first time that part of the seized currency belonged to his mother.

According to the government, both Gourdine and Gentile have criminal histories. Gourdine was convicted in February 2019 for "Possession of a Controlled Substance." ECF No. 27 at 5. Gentile was convicted in April 2017 for "Possession, Less Than One Gram, Ice/Crack Cocaine." Id. The government also submits that Gourdine reported $7,055.65 in wages to the South Carolina Department of Employment and Workforce ("SCDEW") between the first and third quarters of 2018 and $4,320.38 between the first and third quarters of 2017. Gentile reported no wages to SCDEW in 2018 and $2,678.64 between the first and fourth quarters of 2017.

On January 14, 2020, the government filed this in rem civil action for forfeiture of the defendant currency to the United States pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(C), and 18 U.S.C. § 981(a)(1)(A). ECF No. 1. On January 15, 2020, the government served notice of the judicial forfeiture action on Gourdine and Gentile. ECF No. 5. On February 19, 2020, Gentile and Gourdine filed verified claims asserting their interests in the defendant currency. ECF Nos. 8, 9, respectively. On March 11, 2020, Gentile and Gourdine filed the instant motion to dismiss pursuant to Federal Rule of

Procedure 12(b)(6). ECF No. 12. On January 26, 2021, the government responded. ECF No. 27. As such, this motion is now ripe for review.

## II. STANDARD

Any money furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate a drug offense is subject to forfeiture under 21 U.S.C. § 881(a)(6). Moreover, any property involved in a money laundering transaction or attempted money laundering transaction in violation of 18 U.S.C. § 1956 or 18 U.S.C. § 1957 is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A). Likewise, proceeds of other forms of specified illegal activity set forth in 18 U.S.C. § 1956 are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C).

A civil forfeiture action is an <u>in rem</u> proceeding brought by the government as plaintiff asserting that "all right, title, and interest in [the defendant] property" has vested in "the United States upon commission of the act giving rise to forfeiture." 18 U.S.C. § 981(f). A civil forfeiture action is governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106–185, 114 Stat. 202 (codified in part at 18 U.S.C. § 983). Under CAFRA, the government ultimately must prove, "by a preponderance of the evidence, that the property is subject to forfeiture[.]" 18 U.S.C. § 983(c)(1). "[I]f the [g]overnment's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, the [g]overnment shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). "However, the [g]overnment need not satisfy the burden imposed by § 983(c)(3) at the initial pleading stage." <u>United States v. $78,850.00 in U.S. Currency</u>, 444 F. Supp. 2d

630, 637–38 (D.S.C.2006) (citing United States v. $200,255.00, 2006 WL 1687774, *7 (M.D. Ga. June 16, 2006)).

In a forfeiture action complaint, the government must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). The "reasonable belief" standard in Rule G(2)(f) is the same standard for sufficiency of a complaint contained in the previously applicable Rule E(2) and cases interpreting it. Supp. R. G(2) 2006 advisory committee notes; see, e.g., United States v. Mondragon, 313 F.3d 862, 864 (4th Cir. 2002); $78,850.00, 444 F. Supp. 2d at 638. Rule E(2)(a) required, and still requires, that the "complaint . . . state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. E(2)(a).

"A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b)." Supp. R. G(8)(b)(i). A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the [pleading] in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Importantly, "the [g]overnment may use evidence gathered after the filing of a

complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture[.]" 18 U.S.C. 983(c)(2).  Therefore, "[n]o complaint may be dismissed on the ground that the [g]overnment did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Id. § 983(a)(3)(D).  As such, "the [g]overnment's forfeiture claim can advance forward in the face of a . . . motion to dismiss even if the [g]overnment's complaint does not provide all the facts that would allow the [g]overnment to ultimately succeed in the forfeiture proceeding." United States v. 630 Ardmore Drive, 178 F. Supp. 2d 572, 581 (M.D.N.C. 2001).

### III.   DISCUSSION

Gentile and Gourdine argue that the complaint does not allege sufficient facts to satisfy the "reasonable belief" standard in Rule G(2)(f).  Specifically, claimants argue that "[t]he only nexus to an illegal substance that the government can provide is that the bags smelled like marijuana to the extent that a K-9 unit alerted." ECF No. 12-1 at 5.  Claimants further explain that the government has not charged them with any crime.  Therefore, they argue, any belief that the government will be able prove by a preponderance of evidence that the funds are forfeitable at trial is not reasonable.

The government, naturally, argues the allegations in the complaint support a reasonable belief that the government can meet its burden of proof at trial.  In particular, the government argues that "the quantity of currency, the manner of packaging, [c]laimants' implausible statements, their criminal records, their admission to smoking marijuana, the drug dog alert, their intended destination to a source state, the lack of legitimate income as evidenced by the SCDEW records, and the other indicia of drug

trafficking activity present in this case" satisfy the "reasonable belief" standard in Rule G(2)(f). ECF No. 27 at 10. The court agrees with the government.

The complaint sets forth sufficient facts to survive claimants' motions to dismiss. At this time, the government need not present evidence sufficient to establish the forfeitability of the property. Rather, to be sufficient at the pleading stage, the complaint must only support a reasonable belief that the government can meet its burden at trial. Supp. R. G(2)(f). In other words, the court must determine whether the complaint, read in a light most favorable to the government, alleges facts that support a reasonable belief that the government can prove at trial that the seized currency was, more likely than not, connected to an illegal drug transaction, money laundering, or an illegal money transmitting business. See 21 U.S.C. § 881(a)(6); 18 U.S.C § 983(c); Mondragon, 313 F.3d at 866–65. The court concludes that it does.

The court looks to the totality of circumstances to evaluate the sufficiency of the complaint. Here, the government alleges that officers stopped and searched Gourdine and Gentile after reports that claimants and their luggage smelled strongly of marijuana. Upon investigation, claimants admitted to smoking marijuana that day and a K-9 trained in narcotics detection alerted to claimants' luggage. United States v. Currency, U.S. $42,500.00, 283 F.3d 977, 982 (9th Cir. 2002) (noting that "a sophisticated dog alert [] is an important factor . . . ."). These allegations suggest that Gourdine and Gentile have a drug connection or source. That belief is further supported by claimants' criminal records relating to drug possession. See United States v. $118,170.00 in U.S. Currency, 69 Fed. App'x 714, 717 (6th Cir. 2003) ("A claimant's record of drug activity is a highly probative factor in the forfeiture calculus."); United States v. $110,873.00 in U.S.

7

Currency, 2004 WL 2359726 at *3 (N.D. Ohio 2004) ("[A] claimant's record of prior drug activity is an important consideration in determining whether there is a nexus between the property and drug activity."). Additionally, claimants were carrying a large amount of cash bundled with rubber bands and hidden in various items of clothing, tending to suggest an illegitimate purpose or source of that money. See United States v. $242,484.00, 389 F.3d 1149, 1162 (11th Cir. 2004) ("A common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack. They don't, because there are better, safer means of transporting cash if one is not trying to hide it from the authorities."). Claimants' possession of the defendant currency was further suspect in light of claimants' reported wages, inconsistent claims of ownership of the cash, and inconsistent stories about the intended use of the cash. See United States v. $22,474.00 in U.S. Currency, 246 F.3d 1212 1216–17 (9th Cir. 2001) (inconsistent statements and discrepancies in stories support an inference that the money was drug-related); United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) ("[E]vidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income . . . satisfies the burden imposed by the statute."). For example, Gentile first claimed that the defendant currency belonged only to Gentile and Gourdine but soon after claimed that some of the money belonged to his mother. Yet Gentile's mother has not filed a verified claim of interest in the defendant currency. Moreover, Gourdine claimed the money was to purchase "beats" and shoot a music video with aspiring rap artist Gourdine. However, Gourdine stated that he planned to use the money to purchase new clothes. The

government also alleges that claimants were traveling to a "source state" via a one-way ticket.  See States v. $124,700 in U.S. Currency, 458 F.3d 822, 826 (8th Cir. 2006) ("Gonzolez had flown on a one-way ticket, which we have previously acknowledged is evidence in favor of forfeiture.").

The totality of these allegations supports a reasonable belief that the government will be able to meet its burden of proof at trial, as required by Rule G(2)(f).  Mondragon, 313 F.3d at 866 (finding that the sum, unusual packaging in sealed plastic bags, and drug dog alert on money constituted sufficient indicia of criminality to survive motion to dismiss).  Additionally, § 983(c)(2) expressly provides that the United States may use evidence gathered after the filing of a forfeiture complaint to meet its burden of proof.  630 Ardmore Drive, 178 F.Supp.2d at 580.  "This provision [in § 983(c)(2)] would be meaningless if the government were required to meet the preponderance standard merely to commence an action."  United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1193 (9th Cir. 2004).  As such, dismissal at this stage in the litigation would be premature.

The court is not persuaded by claimants' appeal to United States v. $31,990 in United States Currency, 982 F.2d 851 (2nd Cir. 1993).  In $31,990, the government seized money found in a taxi cab, claiming that the seizure was reasonable based on the large amount of cash discovered, the manner in which it was packaged, the cab driver's story regarding who owned the money, parallels between the cab's itinerary and that of a drug courier, and the cab driver's possession of half a gram of cocaine.  The Second Circuit held that the district court properly dismissed the forfeiture action because the government failed to demonstrate probable cause for the seizure.  However, the court in

9

$31,990 specifically noted that "neither the vehicle's occupants nor the claimant had ever been charged or convicted of any drug-related crimes." Id. at 856. Also, the money in $31,990 was seized after a random stop of the cab on suspicion that it was not registered—in other words, for non-narcotic enforcement reasons. The instant case is distinguishable. Both claimants had prior drug-related criminal convictions, and the claimants were stopped and searched after reports that claimants and their luggage smelled of marijuana and a positive K-9 drug alert.

Regardless, the authority of $31,990 is clearly outweighed by numerous more recent cases, including cases in this district, that have denied motions to dismiss forfeiture actions when faced with similar facts. See, e.g., United States v. $116,850 in U.S. Currency, 2014 WL 6686693, at *4 (D.S.C. Nov. 25, 2014) (finding complaint sufficient based on allegations that officers discovered numerous rubber-banded bundles of money, claimant appeared very nervousness upon stop, a trained K-9 alerted to drugs, and claimant had inconsistent statements regarding travel plans); United States v. $21,408.00 in U.S. Currency, 2010 WL 4687876, *3 (S.D. Ga. Nov. 10, 2010) (finding a complaint setting forth an unusual quantity of currency, its manner of packaging, the claimant's false story, a dog alert, and the claimant's lack of legitimate income satisfied Rule G(2)(f)); United States v. $36,110.00 in U.S. Currency, 2009 WL 692830, *4 (D.S.C. Mar. 12, 2009) (finding complaint sufficient under Rule G(2)(f) when it recited that a large quantity of currency was found in a hidden compartment in a vehicle and that a drug dog alerted to the area of the vehicle where the currency was found); United States v. $40,000 in U.S. Currency, 2010 WL 23303353 (W.D.N.C. 2010) (finding complaint sufficient based on drug dog alert, marijuana odor, and statements made by claimant).

Claimants may be able to rebut some or all of the government's allegations at trial. However, this is irrelevant to the question before the court. The government has clearly "state[d] sufficiently detailed facts to support a reasonable belief that the [it] will be able to meet its burden of proof at trial." Supp. R. G(2)(f). As such, the allegations pleaded in the complaint are sufficient to survive the motion to dismiss.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 4, 2021**
**Charleston, South Carolina**